

**Second Memorandum to File**

June 10, 2004

The Parties (the Settling Plaintiffs and the Settling Defendants) have prepared this Second Memorandum to the File in order to confirm their joint understanding concerning efforts to improve the functioning of the Deposited Assets claims process. The Parties agree that both sides have acted in good faith in connection with the implementation of the Settlement Agreement and further agree that all parties have fulfilled their commitments as set forth in the Settlement Agreement, as amended. The parties further agree that nothing in this Memorandum constitutes a legal admission by any party or acts in any way to modify the provisions of the Settlement Agreement, as amended. This Second Memorandum to File does not modify the Memorandum to File dated August 9, 2000, save as explicitly set out herein.

1. *CRT II New York Facility*

(a) The parties are advised that the CRT II wishes to establish a branch in New York City in order to expedite its work. The parties are further advised that the CRT II wishes to perform the following tasks in New York in a manner substantially similar to its performance of identical tasks in Zurich. First, the CRT II wishes to perform routine computer matching of the AHD database against Deposited Assets claims of Settling Plaintiffs. To do this, the CRT II wishes to have access to the full AHD database in its New York City facility. Second, once a confirmed computer match has been determined and the CRT II, in its sole discretion, finds that the claimant has provided plausible evidence that (a) he or she is a Settling Plaintiff, (b) the claimant is related to the person whose name matches to the AHD database in a manner that would entitle her or him to an award (if all other criteria for an award are satisfied), and (c) the claimed account owner is a Victim or Target of Nazi Persecution, then the CRT II wishes to

Second Memo to File
June 10, 2004

adjudicate the claim in its New York City facility. In case of a match that meets the foregoing requirements, the CRT II wants the Data Librarian to give the CRT II in Zurich access to the existing file on the matched account that the ICEP auditors had prepared in the course of their forensic investigation (the "ICEP File"), in accordance with the Data Librarian Rules. For the avoidance of doubt, the ICEP File does not include the general working papers of the ICEP audit firms. The CRT II will send the ICEP File to its computer system pursuant to a secure computer connection, so that it will thereby become available to CRT II claims officials in New York City. With respect to accounts included in the AHD, the Settling Plaintiffs and the CRT II do not now, and will not in the future, seek access from the Settling Defendants to documents that are not included in the ICEP File; provided, however, that existing voluntary cooperation in resolving particular claims in accordance with Section B.3 of the August 9, 2000 Memorandum to File is not precluded.

(b)     The Parties further note that the CRT II will seek explicit prior approval from the Swiss Federal Banking Commission of its plans to perform the work specified in paragraph 1(a) at the New York facility. This Memorandum will not become effective until such approval has been granted.

(c)     In these circumstances, the Settling Defendants, in view of the confidentiality measures recited in Section 7.9 of the Settlement Agreement, as amended, and set forth herein and in Appendix A, support the establishment of the New York City facility to perform the tasks specified in paragraph 1(a), on the condition that the Court and the CRT II adopt confidentiality measures satisfactory to the competent Swiss authorities, including, without limitation, full compliance with the confidentiality provisions of Section 7.9 of the Settlement Agreement, as amended, and the specific further security measures set forth herein and in Appendix A, and incorporated by reference as if fully set forth herein.

(d)     The Settling Defendants will offer their good faith support for the Settling Plaintiffs' efforts with the Swiss regulatory authorities as described in Paragraphs 1(b), 1(c), 1(e), 2(a), and 2(b).

(e)     The CRT II assumes full responsibility for compliance with all relevant aspects of Swiss law, which is a condition of this Memorandum to File.

2.     *Additional Publication*

(a)     The Parties will support publication by the CRT II, on the Internet only, of the names of account holders listed by ICEP as Category 3(b) for the Settling Defendants (roughly 95% of the approximately 3,000 account names in that Category). The CRT II will seek regulatory authority for such publication from Swiss authorities. The parties note that the Category 3(b) accounts are already included in the AHD.

(b)     The Parties will support the republication by the CRT II, on the Internet only, of the following accounts that were the subject of previous efforts by the Swiss government to identify potentially relevant Swiss bank accounts from the World War II era: (i) accounts identified by the Swiss government as falling under the scope of the 1962 Swiss Federal Decree on Assets of Victims or Racial, Religious and Political Persecution, which the Parties understand were published in 1998 in the Internet by the Swiss federal government; (ii) Polish and Hungarian accounts from the World War II era (as recently published by the Polish and Hungarian Governments), which were the subject of international agreements between Switzerland and Poland and Hungary respectively, unless the accounts described in (i) and (ii) are already included in the AHD. Any accounts that have already been paid or published in 2001 will be removed from these lists before publication. Upon publication, any published accounts not already in the AHD will be added to the AHD. The CRT II will, as needed, seek regulatory authority for such publication or republication from Swiss authorities.

(c)     The Settling Plaintiffs, having reviewed relevant information from the ICEP audit process indicating the likely Swiss ownership of a substantial majority of ICEP Category 4 accounts, permanently abandon their previous demand for publication of the ICEP Category 4 accounts.

(d)     The Settling Plaintiffs agree that, other than the accounts described in sub-paragraphs 2(a) and (b), they will not seek or support publication or republication of additional accounts.

(e)     The Settling Plaintiffs agree that they will not seek or support any review of the so-called ICEP scrubbing process.

(f)     The Settling Plaintiffs agree that they will not seek or support any review of the criteria applied by the ICEP and its auditors.

3.     *TADs*

(a)     The Parties have agreed in the past that, in certain specific instances, the CRT II will be permitted to carry out research into the Total Account Databases ("TADs") relating to the Settling Defendants. This prior agreement is set forth in the Amendment Two to the Settlement Agreement, and the accompanying Memorandum to File dated August 9, 2000. This Second Memorandum supplements the August 9, 2000 Memorandum to File by replacing the Swiss address exception under B.3 of the August 9, 2000 Memorandum to File by a new category of claims for which the CRT II may search in the relevant Settling Defendant TADs in the manner described in paragraphs 3(b) and (c), below.

(b)     The Parties agree to further TAD research only as follows: The CRT II staff has identified not more than 13,500 specific Deposited Assets claims of Settling Plaintiffs that in its reasonable judgment appear meritorious even though they have not generated matches with accounts in the AHD, or the matches have been disconfirmed. The CRT II will rank-order these

4

Second Memo to File
June 10, 2004

claims pursuant to criteria it establishes. The CRT II will then further identify the 2,000 claims that have in its estimation the strongest factual support. In accordance with the previous "experimental" matching, the CRT II will then match (using a reasonable matching protocol) the 2,000 claims against the SBC and UBS TADs, for purposes of testing the efficacy of TAD matching generally. The CRT II will perform matching against the TADs of the relevant Settling Defendant(s) only if, in the CRT II's judgment, the initial results of the matching against the SBC and UBS TADs warrant further matching on a cost/benefit basis. Notwithstanding the foregoing, but similar to the arrangements agreed to in the August 9, 2000 Memorandum to File, each Settling Defendant may opt to have the relevant ICEP auditor (i.e., KPMG at former SBG, PricewaterhouseCoopers at former SBC and Deloitte & Touche at CSG) instead of the CRT II conduct the matching against the TAD and the subsequent research; all fees and expenses incurred by the audit firms shall be borne by the settlement fund pursuant to Sections 7.5 and 7.8 of the Settlement Agreement, as amended.

(c)     Where the foregoing TAD matching process has identified one or a "cluster" of potential matches, the CRT II will deliver, or, as the case may be, request that the relevant ICEP audit firm deliver, a copy of the ICEP File and the Referenced Documents (as defined below), if any, for those matched accounts to the Data Librarian, who will then redact these documents pursuant to the Data Librarian Rules and, subject to the procedures set out in Appendix B, provide a copy of the redacted ICEP File and Referenced Documents to the CRT II. If the CRT II carries out the TAD matching process, the Data Librarian shall establish an ad-hoc office at the location where the TAD matching takes place so as to receive and redact on-site the ICEP Files and any Referenced Documents.

(d)     Subject to the procedures set out in Appendix B, the CRT II may request and is entitled to receive and review only: (i) documents physically found in the ICEP File; and (ii)

5

individual documents the ICEP auditors specifically referenced by number in the ICEP File (the "Referenced Documents"). For the avoidance of doubt, other references to source documents, to other databases, and to other similar unspecific references do not constitute Referenced Documents. Settling Defendants have no obligation to search for or provide any other documents or information from bank archives or otherwise (and, in particular, are under no obligation to compile a new file for the many accounts in the TAD which were not reviewed in detail by ICEP auditors).

(e) The Parties agree that all TAD research will be confidential, will be used solely for the purposes set forth herein, and will be carried out in a secure location within the relevant bank, and under no circumstances will any TAD research be carried out outside of Switzerland. The Settling Plaintiffs agree that neither they nor the CRT II will in the future request or support requests that TAD research be performed, or that the TADs be centralized. Existing voluntary cooperation in resolving particular claims in accordance with Section B.3 of the August 9, 2000 Memorandum to File is not precluded, however.

4.   *Finality*

The Parties agree that the Settling Defendants are entitled to finality, and, accordingly, Settling Plaintiffs and the CRT II will not seek or support further requests to Settling Defendants for any actions in connection with the Settlement or distribution of settlement funds beyond those reflected in the August 9, 2000, Memorandum to File, or this Memorandum to File. Additionally, Settling Plaintiffs and the CRT II will not seek or support any requests to Other Swiss Banks or the Swiss Bankers Association for any actions in connection with the Settlement or distribution of settlement funds, save for requests for voluntary cooperation in resolving particular claims. Finally, Settling Plaintiffs will withdraw their Motion for Additional Information, filed April 16, 2004.

Second Memo to File
June 10, 2004

5.  *Effectiveness*.  This Memorandum to File does not take effect until it is signed by authorized counsel and accepted by the Court, and the Swiss Federal Banking Commission approval referred to in paragraph 1(b) has been granted.

Dated: June 10, 2004

_____
Prof. Burt Neuborne
New York University Law School
40 Washington Square South
New York, NY 10012
*Settlement Counsel for Plaintiff Class*

Dated: June 10, 2004

_____
Roger M. Witten
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
*Counsel for UBS AG and Credit Suisse*

**SO ORDERED**

Dated: Brooklyn, New York
       June __, 2004

_____
United States District Judge

7

Appendix A

    Provisions relating to the security and confidentiality of the NYC facility.

1. The Court has issued an Order setting forth procedural requirements to ensure the protection of data confidentiality, violation of which is punishable by contempt. All CRT II employees will be required to sign a confidentiality agreement that incorporates the terms of that Order and makes violation of the Agreement contempt of court.

2. All document access will be done via a secure, "closed" system that will enable documents and information from Zurich to be displayed and accessed but not saved, downloaded, stored, printed (including screen prints) or otherwise exported. No computer with access to the secure network will otherwise have Internet access. No cameras, scanners, tape recorders, or any other recording or copying devices will be permitted in any room where the terminals wired to the secure network are located.

3. The Data Librarian will provide the CRT II access to scanned versions of documents in the ICEP Files and the Referenced Documents only. No other documents will be scanned, or otherwise provided to the CRT II New York facility. Voluntary assistance will continue as before in the Zurich facility.

4. Settling Defendants will have the right to inspect the facilities to ensure adequate security. Settling Defendants will also have the right to review the resumes of any CRT II employees who will be working with secure documents; Settling Plaintiffs and the CRT II shall consider in good faith any concerns that Settling Defendants might express about actual or proposed employees.

Second Memo to File<br>June 10, 2004

Appendix B

Provisions relating to the delivery of ICEP files to the CRT II in case of a match against the TADs.

1. In case of a match against the TAD, the CRT II or, as the case may be, the relevant ICEP audit firm (i.e., KPMG at former SBG, PricewaterhouseCoopers at former SBC and Deloitte & Touche at CSG) shall determine if the matched account or matched other customer relationship was opened on or prior to May 8, 1945. In making that determination, the CRT II or the ICEP audit firm shall consult with the relevant bank if the account opening date cannot be clearly established. The CRT II shall only be entitled to receive the ICEP File and any Referenced Documents with respect to accounts and other customer relationships which were opened on or prior to May 8, 1945, or which have an unknown opening date.

2. Where the CRT II or the relevant ICEP audit firm determines that the matched account or matched other customer relationship was opened after May 8, 1945 (a "Post War Account"), neither the ICEP audit firm nor the CRT II employees who participate (where permitted) in the matching and research of matches shall disclose, directly or indirectly, the existence of, and any details on, any Post War Account to any employees of the CRT II who are not participating in the matching and research, or to any third person. The same applies *mutatis mutandis* if the CRT II or the relevant ICEP audit firm concludes that the account owner is not the person claimed by the claimant.

3. Neither the CRT II nor the ICEP audit firm shall remove from the premises of the relevant bank any documents or other written or electronic information on Post War Accounts and accounts where the account owner is not the person claimed by the claimant.

4. Subject to the foregoing, the ICEP audit firm shall deliver the ICEP File and the Referenced Documents, if any, to the Data Librarian for redaction in accordance with the Data Librarian Rules. Simultaneously, the ICEP audit firm shall deliver a copy of these documents to the relevant Settling Defendant.